[Civ. No. 4788.   Third Appellate District.—June 30, 1933.]

GROVER SHANNON et al., Respondents, v. CENTRAL-GAITHER UNION SCHOOL DISTRICT et al., Appellants.

Len H. Honey and Lloyd E. Hewitt for Appellants.

Rich, Weis & Carlin and Arthur Coats for Respondents.

THOMPSON, J.—The plaintiff's ten and a half year old boy was struck and seriously injured by a passing automobile while he was crossing the highway from the school bus to his home. Suit for damages was brought against the school district and the trustees. A jury returned a verdict of $1109.40 against the defendants. From the judgment, which was accordingly rendered, they have appealed.

It is claimed the evidence fails to prove negligence on the part of the defendants or their driver of the school bus, and on the contrary that the boy's contributory negligence is established as a matter of law.

The plaintiff, Grover Shannon, lives on the river road in Sutter County near Tudor. His residence adjoins the public highway in a rural district. The highway has an 18-foot paved strip with wide, receding shoulders. It is straight and level at this point. There is ample room for a vehicle to park on the shoulders of the roadway without resting the wheels on the concrete pavement. The plaintiff's young son Samuel and his daughter Barbara, who was a couple of years older, had attended the Central-Gaither Union School for several years. The district operated a school bus by means of which the pupils were conveyed to and from school. At the time of the accident the regular bus driver was absent and Mr. Manners, the principal of the school, was engaged in driving the bus. Six children ranging from ten to fourteen years of age were riding in the conveyance. The machine was 22 feet in length with doors on the sides near the front of the vehicle. Mr. Manners stopped the bus across the highway opposite the Shannon home. The machine was parked with two-thirds of its width overlapping the concrete pavement contrary to section 136 of the California Vehicle Act, although the driver admitted "there was no difficulty to drive off if I had driven off" the pavement. Before he opened the door for the Shannon children to leave the bus, he saw a machine approaching on the highway from in front. He said it was then 100 or 150 yards away and traveling toward them at

the rate of about 40 miles an hour. Neither of the children saw nor heard this approaching machine. He knew it was the custom of the children to leave the conveyance and walk along the side to the rear end of the bus before crossing the highway. Their view of the approaching machine was thus obscured by the intervening bus. Although Manners testified that he warned the Shannon children of the approaching machine, all six of the children who were riding in the bus denied that they heard any such warning. Mrs. Shannon also testified that when Manners carried her boy into the house after the accident occurred, that he said to her, "I have warned them repeatedly, *and this time I failed to warn them.*" There was therefore a conflict of evidence regarding the warning. Barbara preceded her brother across the highway. Samuel reached a point about halfway across the paved portion of the highway, when his sister suddenly observed the approaching car and the danger which threatened him. The car was driven by a Filipino. It had reached a point nearly opposite the bus. She called to her brother, who, for the first time, saw the machine. He stopped and turned too late to escape. He was struck and dragged a considerable distance before the Filipino's car was stopped. The child was rendered unconscious and suffered severe injuries. The doctor testified that he received ruptures of both a kidney and the liver. Injury to the nerves of one leg left a weakened condition of the limb. He suffered from severe shock and hemorrhage. Blood transfusion was necessary to restore his strength. He was confined to the hospital at Sacramento for nearly a month.

The plaintiff, Grover Shannon, brought suit against the school district and its trustees for the medical and hospital expenses incurred as a result of the accident. As guardian of his minor son he also asked for damages for the injuries suffered. The answer denies the charges of negligence against the defendants and affirmatively alleges that the injuries were sustained as the proximate result of the boy's contributory negligence. The cause was tried with a jury. The following verdict was returned: "We, the jury, find our verdict in favor of the plaintiff Grover Shannon and fix his damages in the sum of $1,109.40, and we find our verdict in favor of the plaintiff Samuel Shannon and fix his damages in the sum of $——."

A judgment for that sum was accordingly rendered. From this judgment the defendants have appealed.

Three questions are raised on this appeal. The respondent contends the driver of a school bus which conveys only the pupils of its school is, nevertheless, a common carrier of passengers which must be operated with the "utmost care and diligence" under the provisions of section 2100 of the Civil Code. The appellants assert that the evidence fails to support the judgment for the reason that it does not appear the driver of the bus was guilty of negligence and that upon the contrary the record discloses the fact to be that the injured boy was guilty of contributory negligence as a matter of law.

■ We are of the opinion that a bus which is operated only for the convenience of a particular school under the circumstances of this case is a mere private carrier as distinguished from a common carrier, and that ordinary prudence for the safety of children under similar circumstances is all that is required of the district or the driver of the bus. (*Gornstein* v. *Priver,* 64 Cal. App. 249 [221 Pac. 396]; *Klein* v. *Baker,* 112 Cal. App. 157 [296 Pac. 631]; 4 Cal. Jur., 815, sec. 2.) Section 2168 of the Civil Code defines common carriers as follows: "Everyone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry."

Section 2096 of the same code provides that: "A carrier of persons without reward must use ordinary care and diligence for their safe carriage."

In the case of *State* v. *Nelson,* 65 Utah, 457 [238 Pac. 237], as it is reported in 42 A. L. R., note, at page 855, this statement of the law is found: "One who operates a bus or stage in accordance with the terms of a contract, for the benefit of a particular class, and not for the benefit of the public generally, is not a common carrier."

In 6 Words & Phrases, third series, 118, the following distinction between common and private carriers is expressed. The quotation is with reference to *Orr & Lanning* v. *Boockholdt,* 10 Ala. App. 331 [65 So. 430]. It is there said: "The distinction between a 'common carrier' of passengers and a 'private carrier' is that the former must receive all who apply for passage so long as there is room and no legal

excuse for refusing, while such duty does not rest on the latter.''

Since a school bus is operated for the sole convenience of the pupils of a particular school and there is no legal obligation for it to carry passengers generally or even to carry the pupils of other schools, it may not be deemed to be a common carrier of passengers, and the highest degree of care and diligence in its operation is therefore not required. We assume that the defendants in the present action are liable only for failure to exercise ordinary care and prudence for the safety of their pupils under the particular circumstances of this case.

There is ample evidence to support the implied finding of the jury to the effect that the driver of the school bus was guilty of negligence, under the circumstances of this case, which proximately contributed to the injuries of the child. It is ordinarily necessary to exercise greater care for the protection and safety of young children than for an adult person who possesses normal and mature faculties. One should anticipate thoughtlessness and impulsiveness in the conduct of a young child. In *Victory Sparkler & Specialty Co.* v. *Latimer,* 53 Fed. (2d) 3, it is said: ''One dealing with children must anticipate ordinary behavior of children.''

And likewise it is said in 45 C. J. 702, section 78: ''The known characteristics of children should, . . . be taken into consideration in determining whether or not sufficient care for the safety of a child has been exercised in a particular case. Accordingly, the fact that children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults imposes upon those by whose acts or omissions a child may be injured an obligation of exercising more vigilance and caution than might be sufficient with respect to an adult, and conduct which might reach the standard of ordinary care with respect to an adult might, in the case of a child, amount to negligence.''

The question of the negligence of the defendants in the present case should therefore be determined with due regard to all the surrounding circumstances including the age, mentality and childish impulses of the injured boy. The boy was but ten and a half years of age. He was full of life and activity. He was addicted to hilarious pranks. He was

armed with a slingshot which he carried in his trousers' pocket at the time of the accident. The moment he left the bus he started for home on the run. He was just the sort of an eager, active boy that lacks deliberation. The principal who drove the bus had charge of the boy in school. He must have known of his impulsive temperament, yet the record contains evidence which warranted the jury in assuming that Manners permitted the child to leave the bus and dart back behind the vehicle to cross the highway without warning him of the rapidly approaching machine which was but a short distance away.

The evidence presents the following questions regarding the negligence of the driver of the bus: Was he justified in stopping the school bus on the side of the roadway opposite the children's residence, requiring them to cross the traffic of the highway to reach their home? Did the parking of the bus at the roadside so as to overlap the traveled portion of the pavement some four feet, in violation of the statute, increase the danger to the children and proximately contribute to the accident? It may be reasonably assumed that if Manners had complied with the statute and had parked the bus on the shoulder, as he admitted he might have done, there would have been more space after passing the rear end of the bus within which to discover the approaching machine. Finally, with full appreciation of the youthful immaturity of the boy, with knowledge of his impulsive temperament and his habit of darting to the rear of the bus to cross the highway, it is important to determine whether it was negligent for the driver of the bus to permit the child to leave the machine without warning him of the danger of the rapidly approaching car. These are all questions of fact to be determined by the jury. In view of the conflict of evidence the court may not resolve these questions in favor of the defendants as mere matters of law. From the verdict it must be inferred the jury found that the driver of the bus was guilty of negligence with respect to one or more of the foregoing acts or omissions and that this negligence proximately contributed to the injuries which were sustained by the child.

The remaining problem is whether the admission of the boy to the effect that he did not look for approaching machines before he attempted to cross the highway consti-

tutes contributory negligence under the circumstances of this case. We conclude that the question of the contributory negligence of a ten and a half year old boy under the circumstances of this case was a problem for the determination of the jury, with the solution of which this court may not interfere on appeal.

The appellants contend that the admission of the boy that he failed to look for approaching machines before he attempted to cross the highway is conclusive proof of his contributory negligence as a matter of law. On cross-examination which was conducted by appellants' attorney, Mr. Honey, the following record appears: "Q. You knew better than to run across the road without looking to see if any machine was coming? A. Yes, sir. Q. You knew if you did that you were likely to get hit? A. Yes. Q. You just ran across there without looking this time? A. Yes, sir. Q. That's all."

Without any disposition to criticise counsel, this reads like the ingenious examination of a skilful attorney. It indicates the obliging answers of a timid youth who is unfamiliar with the solemn proceedings of a courtroom. It is significant that when these favorable answers were elicited from the boy, the subject was immediately and wisely abandoned by the attorney. The jury observed the boy upon the stand and the adroit manner in which he was examined. They were better able to determine the weight and effect of these admissions. In view of the serious result of the accident, it is not surprising that he should admit after much subsequent thought over the matter, that he knew he was likely to get hit if he attempted to cross the highway. And the last alluring question, "You just ran across there without looking this time?" probably propounded with a friendly smile, naturally induced the reply, "Yes, sir". Of course it is material to know whether the boy actually did thoughtlessly run on to the highway without looking. It seems quite likely he did not look in the direction from which the automobile came or he would have seen the machine. This failure to look for approaching machines might be deemed to furnish conclusive evidence of contributory negligence on the part of an adult person. But the same degree of care is not required of a child of tender years. In the case of *Oberholzer* v. *Hubbell*, 36 Cal. App. 16 [171 Pac. 436], it was held that the failure

of an adult person of mature judgment to look for approaching machines at the intersection of cross-streets did not constitute contributory negligence so as to defeat her right to recover damages as the result of an automobile collision. The court there said: "It was developed upon the cross-examination of the plaintiff that there was nothing to obstruct her view or that of her husband of the approach of the defendant's automobile; that neither she nor her husband looked to see if other vehicles were approaching, and that if they had looked in the direction from which the defendant's automobile approached they could have seen it, and would have stopped."

Notwithstanding these facts, a judgment in favor of the plaintiff was affirmed on appeal, and a rehearing was denied by the Supreme Court. Contributory negligence was an issue in that case. This merely means that the mere failure to look for machines before one crosses a highway does not necessarily charge him with contributory negligence. This failure should be considered with all the other facts and circumstances of the case in determining whether one is guilty of contributory negligence.

In the present case the failure of the child to look for approaching machines is of much less consequence than it appears to have been in the Oberholzer case. That case involved the crossing of a busy thoroughfare of a city street by intelligent adult persons. The present case involves the crossing of a highway in a rural district with scarcely any traffic in sight. The boy who is charged with negligence was but ten and a half years of age. He possessed a child's mind and thoughtless disregard of unseen dangers. The intervening auto bus concealed his view of the highway until he emerged from behind the vehicle. In spite of the admissions contained in the foregoing evidence, the question of his contributory negligence was a problem for the determination of the jury. It does not constitute negligence as a matter of law, under the circumstances of this case.

The question of the negligence of a child of tender years is usually and naturally a problem for the determination of a jury. Almost uniformly the question of the negligence of young children is considered a problem for the decision of a jury. In the case of *Loftus* v. *Dehail*, 133 Cal. 214 [65 Pac. 379, 380], relied upon by the appellants, it was not

decided that the infant child of seven years of age was guilty of contributory negligence in falling into an open, unguarded cesspool which was maintained on the property of the defendants. The court said: "She was pushed in, in a fit of temper, by her younger brother. His act was the proximate cause of the injury." Upon this theory, that case was decided. It has no bearing on the present suit.

The rule applicable to the question of the responsibility for the negligence of a child is clearly stated in 5–6 Huddy's Encyclopedia of Automobile Law, 195, section 116, as follows: "Children of very tender years are not chargeable in law with contributory negligence; and if children are *sui juris,* so that contributory negligence may be attributed to them, judgment is not passed on their conduct with the same strictness as in the case of adults. Children are not regarded as possessing the same mental capacity to appreciate the dangers incident to the use of the public thoroughfares as those of mature age. What is required of a child is that it shall exercise the same degree of care as would ordinarily be exercised by a reasonably careful child of the same age and intelligence under like circumstances; and this rule applies in the absence of evidence on the subject of his intelligence. This requirement as to care may, of course, result in a finding that a child was guilty of negligence which contributed to its injury. *Generally the negligence of the child is a question for the jury."*

To the same effect is the text found in 1 Thompson on Negligence, page 292, sections 310–313. This is but a sensible and humane doctrine. It would be unreasonable to judge of the responsibility of a child for its conduct and acts upon the same rules which are applicable to an adult person of mature intelligence. (See, also, *Rosenberg* v. *Durfee,* 87 Cal. 545 [26 Pac. 793].) Likewise in the case of *Sanders* v. *Toberman,* 192 Cal. 13 [218 Pac. 394], in affirming the order of court granting a new trial in a suit for damages for the killing of an eight year old boy while he was crossing a street, in which a verdict was rendered in favor of the defendant, the court said: "The question as to whether or not a child of eight years was guilty of negligence is ordinarily a question of fact to be determined by the jury, notwithstanding the fact that the child may have done things which in an adult would be held contributory negligence as a

matter of law. (*Mayne* v. *San Diego Elec. Ry. Co.*, 179 Cal. 173 [175 Pac. 690], and cases there cited. See, also, *Cahill* v. *E. B. & A. L. Stone Co.*, 167 Cal. 126, 139 [138 Pac. 712].) It is sufficient for the purposes of this appeal to say that the accident occurred at the intersection of two streets, on one of which the defendant was traveling with his automobile, and that the deceased child was attempting to draw a little wagon across the street, accompanied by his sister. The question of whether or not the child was negligent in failing to exercise due caution in observing the traffic at the street intersection was a question for the jury to determine under proper instructions."

We are persuaded the same principle which is above stated applies to the case at bar. There is ample evidence to support the implied finding of the jury in this case to the effect that the child was not guilty of contributory negligence as a matter of law, in spite of his admission that he failed to look for approaching machines before he attempted to cross the highway.

The appellants were very fully protected by elaborate, forcible and favorable instructions which were given to the jury at their request upon every possible defense to the action.

The judgment is affirmed.

Pullen, P. J., and Miller, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 29, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 28, 1933.

Shenk, J., dissented.